Good morning, your honors. May it please the court. I'm Toby Thaler, counsel for plaintiff and appellant Roz Glasser. At counsel table with me is Rick Poulin. I'd like to reserve five minutes for rebuttal. All right. This appeal concerns Ms. Glasser's standing to challenge the National Marine Fisheries Service, NMFS's failure to apply required ESA and NEPA review processes when amending a 50-year incidental take permit affecting ESA-listed Chinook salmon, the king of salmon. Plaintiff Glasser's requested relief is an order requiring NMFS to comply with those procedures in order to address the risks of harm, the concrete injury to her interests. I know this is an oversimplification, but why doesn't this a little bit come under the no good deed goes unpunished? I mean, it appears that appellees effectively gave your client what she originally asked for by rescinding the initial take permit protection for the hatchery, and now she wants rescission of the amendment that lifted the initial take permits protection for the hatchery. And so when her standing on the first one gets mooted, now it's like it's almost like this is a, okay, we gave you what you want, now she wants a new lawsuit. And she's saying she has standing on that. I know that's oversimplification, but it's kind of a cause and fire. That question feeds into the mischaracterization of the causes of action that are at issue. The initial complaint complained about the same statutory duties of process and environmental review. But in 2007, the agency NMFS went through a new process. And it's very important to look at the claims that were at issue. Bottom line, what did she seek initially? She initially sought a requirement that the agency review its review process. And I would like to point to the initial complaint. If you look at ER 54. In conjunction with what federal action? Because you get... The federal action was Section 7 and Section 10. Under Section 10... What was the federal action that was taken by the agency that was being challenged? The challenge was the issuance of a 50-year incidental take permit. And the particular aspect of the permit that was at issue concerned the continued operation and replacement with a larger operation, larger new hatchery that admittedly has impacts on Chinook salmon. That's why it's a take permit. Okay. I understand. Okay. So now, if the incidental take permit that was the federal action being challenged was withdrawn, how can there be a redressable action still extant? Because it was not a withdrawal. Under Section 7... How can a withdrawal not be a withdrawal? Because it was an amendment. Under Section 10, the permit is issued. And it's issued for 50 years. And the agency retains the authority and the duty to review any action to amend the permit. That's very clear under the law in this circuit. Okay. What... Where in the record is there support for your characterization of the action taken as an amendment as opposed to a withdrawal? The record is... Has all the documents that are... I understand that. You're pointing me to the particular document. Yes, I will, Your Honor. Okay. It's the plaintiff's comment on the action, which is important to read because it also relates to the record issue. What I'm asking you to show me is the operative document in the record that says the action taken by the agency was a withdrawal... Was an amendment as opposed to a withdrawal of the incidental take permit. ER 58-6 is the document that refers to... Oh, that's an earlier document. It'll take me a second, Your Honor. ER 58-7... When you say 58, are you talking tabs or page? Yes, that's the excerpt of the record. They're numbered chronologically based on the district court docket entries. 58-7 is the permit amendment dated August 7th, 2007. Got it. The caption is, findings for permit amendment, which under the ESA regulations are explicitly subject to the same environmental review under Section 7 and NEPA as the original permit issuance. Okay. So now in this case, it's saying that the sockeye salmon was the species of interest to your client, right? No. The sockeye... The city wants to produce sockeye salmon for its own reasons. For a sports fishery to provide fish in the lake. Well, the sockeye is the one that has to do with this, but we can call your client the friend of the Chinook or whatever. Right. Okay, there's a relationship between the sockeye and the Chinook. The sockeye are an introduced species and are not subject to the ESA, but the production of the sockeye in an artificial hatchery by the tens and hundreds of thousands of returning adults adversely impacts the Chinook. That's the take. We understand that. That's the take. So it's the NIP's obligation and duty to ensure that the city's operation and construction and replacement of the hatchery does not result in adverse impacts or take to the Chinook. And they did that in... I don't understand your argument because, okay, the document that you pointed us to says that both the interim sockeye hatchery and the planned permanent hatcheries are no longer included in the incidental take permit, right? So then they would be subject to the general law regarding... Yes, Your Honor, but it's the very action of removing them from the take permit that is at issue in the supplemental complaint that was at issue on summary judgment. The summary judgment that was decided by the court... Okay, but if what she sought in the beginning on her lawsuit wasn't it to remove them from the take? Yes, but that's not the action before us. At that time she did ask if I will the initial complaint, excerpt of record 54, page 24, part of the original cause of action was complaining about the continued operation of the interim hatchery, the existing hatchery before the amendment took place in 2007. Okay, but now it's not going to operate. It's not going to operate... It is operating. That's the point. The city now gets to continue operating and taking without any environmental review of the amending of the permit. But she has the traditional remedies under the Endangered Species Act. That's not this cause. This cause doesn't have to do with the take. This cause has to do with the NMPS procedure of amending the permit. Under Lujan and this court's decision in NRDC v. EPA, it's very clear that the environmental procedural statutes that apply to the amendment of the permit give Ms. Glasser standing to challenge their failure to apply the process. At the end of the day, what difference does it make? I mean, assume we agree with you that all of the procedural regularities weren't followed here. The city has withdrawn its request for this permit. They're subject to being sued if they violate the environmental laws. So what would you have this court do? Go back and tell the environmental agency, you didn't follow the procedures correctly in So what? So what do we do? It's not a withdrawal of the permit. It's an amendment of the permit. And it's a very important distinction because it relates to Glasser's ability to ensure that the agency complies with its environmental procedural duties. The remedy is to order NMPS to review the risk of impact to her concrete interest of the amending of the permit so that NMPS no longer retains its oversight of the management of the hatchery to ensure that it doesn't harm the Chinook Salmon. And I end my rebuttal time. Okay. Good morning and may it please the court. I'm Justin Pideaux for the United States. Council table with me is Laura Wischik for the city of Seattle and Neil Weiss for the state of Washington. We're not going to be dividing time, but if the court does have questions for the city or state, I'm happy to see some. It's difficult to hear you. What did you say? Sorry. We are not going to be dividing time, but if the court does have questions for the city or the state, then I'm willing to see some of my time to them. Well, it sounds like Ms. Glasser just wants to make sure that you do your job and that you follow procedures. Why doesn't she, you know, I mean, why shouldn't she have standing to do that? Unfortunately for appellant, this sort of I mean, in the Lujan versus Defenders of Wildlife case, the Supreme Court said explicitly that a desire to have the government follow the law is insufficient to grant standing. The Supreme Court, again, reiterated that and just recently in the Summers versus... So, how do you view Summers relative to your position? I think in Summers, the court is emphasizing the fact that a plaintiff, in order to have standing, needs to be able to identify a concrete interest that is at stake, that is causally connected to the government action that is being challenged, and where the court has regressibility. So, it's the same... Her argument is that she does have a concrete interest at stake in terms of her interest in making sure that the Chinook salmon is not harmed by the activities that take place as a result of the operation of the hatcheries. I think that's right, Your Honor, and I guess I'm not trying to suggest to you that that sort of desire to see the protection of the Chinook isn't a real desire, and she may well have concerns about the way the city of Seattle runs its hatchery, but it is the city of Seattle, the hatchery that is at stake here, and consistently that has been her concern. She's worried about the way the city runs a hatchery. Unfortunately, the National Marine Fisheries Service has very limited oversight over the hatchery, and in fact, under the amended ITP, no one has any oversight. What sort of this seems is this lawsuit went from one thing where allegedly she got what she was initially asking for, then she filed an amended complaint, and now she wants to challenge how they got to the place of giving her what she asked for. But what about if, let's say she's the friends of the Chinook, what about the friends of the sockeye? Could they challenge you at this point in terms of withdrawing the take? No, Your Honor. I think there are lawsuits that are conceivable, and those would be lawsuits arguing that the activities that are covered by the current ITP, you know, that that environmental analysis is inappropriate, but the service doesn't analyze activities that aren't covered by a permit in issuing a permit. If you look at the regulations, they clearly state that in issuing an amended ITP, the service will look, sort of go through the same process it goes through to issue an initial ITP. There's the words amendment, and there's the words withdrawal, and appellants are tying their wagon to the fact that this was an amendment, and that that's what gives them standing. How do you approach those two words, amendment and withdrawal? What happened here, and is there conceivably a difference if it's one or the other? I don't think there's a difference, Your Honor, and I mean the regulations don't really envision a withdrawal. They talk about relinquishment, which is also a possibility, and if you look at the implementation agreement here, the city has every ability to relinquish its ITP at any time for any reason. Well, but they didn't relinquish the entire ITP. That's what complicates this. They relinquished it as a vis-a-vis the interim sockeye salmon hatchery and the permanent hatcheries, but it didn't relinquish the entire ITP. That's correct, Your Honor. The regulations also, the regulations also envision permanent amendment, as does the implementation agreement, and in that the species that are proposed to be covered in the ITP, whether it's an initial or an amended ITP, it's the same analysis, and what activities are going to be covered, and the service then says, are these activities likely to substantially impair the recovery of the listed species? Is the applicant engaging in sufficient mitigation to ensure that its activities are not going to jeopardize the species and whatnot, and so it goes through those steps. There's no ability for the service to say, we're not going to give you this amended incidental take permit because we don't like other stuff that you're doing that you're not including in the amended incidental take permit. The regulations Let me ask you this. So is it your position that because the interim sockeye salmon hatchery and the proposed permanent one were relinquished from the Yes, Your Honor, I think that's right. The fact that the city does not want to operate under this ITP is not something that the service can control. The service cannot force the city to operate under an incidental take permit. It can't force it to, basically there's a bargain that's struck between the service and the city, and the service says, if you comply with the requirements of the incidental take permit that we're setting out, then you will be shielded from the Endangered Species Act. However, if an applicant says, we don't want to follow those conditions and requirements, we're willing to take our chances. We're willing to be liable for criminal and civil sanctions should we take a listed species, but we don't want to have this exemption. That's the applicant's right. I mean, Defenders of Wildlife v. Bernal, this court reiterated the fact that having an ITP is not mandatory. That solves the initial problem that the plaintiff saw in this case, but now there's a second problem, they say. And the problem is that they want to assure that the agency will follow the regulations. And it sounds to me that the difference between a relinquishment and an amendment is, counsel points out, that the service has the right for 50 years to look, review an amendment. Is that accurate? They can go back and look at an amendment and make sure that the... I'm not sure exactly what you mean. There's certainly the city, I think the implementation agreement provides that either party, the service or the city, can propose an amendment to the ITP at any time. Is that reviewable then for, once it's granted, once the amendment's granted, as it has been here, does the agency have abiding or continuing jurisdiction to go back and review the amendment? That's what was represented in opposing counsel's argument. He used the figure of 50 years. Is that right? Well, the amended ITP is now extant for 50 years. And certainly if there was a challenge to the amended ITP and what the coverage it provides, the process... If a party could say, I am injured by the current permit, they could bring a challenge. For instance, here, if the service had unilaterally decided that we were no longer going to provide any coverage for the sockeye or the hatchery, the city could have brought a suit saying, you can't just get rid of the ITP. You did our prior coverage. Or if there was an allegation by Glass or someone else that the other operations that are covered by the permit were going to substantially harm the Chinook salmon or the steelhead or whatnot, then they could bring that suit. But what you can't do is say, by issuing a permit that no longer exempts something from the Endangered Species Act, that that somehow causes a harm to the underlying species. Under the amended ITP, the city is absolutely prohibited from taking any listed species as part of its hatchery operations. And that prohibition is enforceable through civil and criminal sanctions. If evidence comes to light that such takes are occurring, the National Marine Fisheries Service has every right to bring an enforcement action against the city. And Glasser has the right to bring a citizen suit. Now, she's trying to say that before they made the amendment, that there should have been a comment period or that it should have all been opened up. Is that what? I mean, I think what she would like is she would like to have seen there to be additional environmental analysis of the hatchery, right? And the service in issuing the amended ITP thought that the hatchery was irrelevant to its amended ITP, because the amended ITP doesn't cover the hatchery. And so the action that's going on is that the service is exempting the city from all these operations associated with its water supply, except the hatchery. And so... So why can't she show concrete injury? Well, I mean, it's hard. It seems like the briefing has been sort of somewhat circular. I'm not, I'm so not sure what concrete injury she thinks that she's received. The hatchery, certainly, she alleges is injuring salmon, but the service doesn't have any oversight of over the hatchery under the amended ITP. There's no claim that, I mean, nothing in her affidavit or in her complaint suggests that there's been some sort of change in the way that the city operates this hatchery because Nymphs has withdrawn or that Nymphs no longer has oversight. And regardless, because the city has the ultimate authority to, you know, not to relinquish the ITP at any time, there's really no ability for the service to provide any meaningful redress to her. I also just want to point out that the opposing counsel suggests that the relief that she seeks is an order by this court ordering the agency to conduct environmental review. Now, I don't think that's quite right. The relief that she seeks and the only relief that she could receive is an order from this court vacating the agency's decision and remanding to the agency for further deliberations. The agency wouldn't have to continue to look at the ITP. The agency wouldn't have to do anything in particular because what would happen is that the agency action will be unwound. And so it seems to me that what the allegation appears to be is that there is some sort of separate use to Glasser of having more environmental review done. But that's not something that she has a legal right to. The only requirements are that the agency action can, you know, if the agency action harms her interests, then she would have a cause of action against us. And I think, you know, if this court refers to its decision in the Nuclear Information Resource Center versus NRC case or the Churchill County case, each of those cases, the emphasis of the court is that a party has to show that there's a causal link between the concrete interest that they allege and the government action. And in the absence of that and the ability for the court to redress that injury, there's simply no standing to bring suit. You know, finally, I'll just return to the supplemental complaint which the Appellant's Counsel discussed. And that complaint, in fact, does include a request for relief of vacating this action, amending the ITP, and also vacating the underlying action of issuing the ITP to the hatchery. Now, it is true that that second claim is stayed pending the resolution of this case, but Appellant cannot have standing to receive a court order which would then allow her to litigate a case against the government to receive the very relief that she has now received. That kind of circular judicial relief simply isn't the basis for standing under the Constitution. Unless there are further questions. The period's up. Great. Thank you very much, Your Honors. Thank you. I'd like to start by referring to the Incidental Take Permits Implementation Agreement that accompanies the Habitat Conservation Plan. It's in the Supplemental Excerpts, ER 37, at page 36. A couple of times, counsel said that NIMS has, quote, limited oversight. And then, almost to the end of his presentation, he said the service has no oversight. That's totally incorrect. The service retained significant oversight over this hatchery to ensure that it would not have an adverse impact. It would not take the list of Chinook salmon. That's the point. That's why they got the permit. The reason that they got the permit was to ensure that the hatchery to produce non-ESA sockeye would not harm the Chinook. And the agencies and the public were told, we're going to have this oversight over this hatchery for 50 years. The record is replete with NIMS promise to make sure that the harm to those fish would not occur. And then, after Glasser complained that they hadn't properly assured that that initial oversight was being done correctly, said, well, we don't want to have to deal with your complaining. We're going to just take it out. And you can go bring an expensive Section 9 case if you don't like what we're doing. But didn't that, I mean, here's the problem that I'm having with that. Then we're back to what the status quo was before the application for the incidental take permit was made. Yes. And it doesn't mean that National Marine Fisheries doesn't have oversight. They do. If there's an environmental harm, they can step in. Council alluded to government action, as well as your client. And so, I'm not sure I follow what the question is. But all the remedies seem to me to be preserved, both citizen remedies and agency remedies. No, because we're complaining about the 2007 action that gives up their substantial oversight over the take of the salmon, the listed salmon by the They said, we're going to oversee this hatchery to make sure it doesn't take fish. But when they get somebody complaining that they didn't adequately oversee and implement the provisions that I cited on page 36 and elsewhere in the record of Excerpt of Record 37, they said, we're going to make you go off and do a Section 9 case. This is not a Section 9 case. This is a request that they apply their legal duties under Section 7 that clearly, under the law in the circuit, applies to amending a permit. What happens tomorrow if National Marine Fisheries decides that the hatchery is operating in a way that violates the environmental laws? You're telling me that they can't take action? They're somehow inhibited because of this? They can take action. They could. But as I stated in the briefing at some point, I said the existence of an alternative action doesn't obviate the cause of action that is before us. The Section 9 action is not before us, nor is the Section 9 public interest action is not before us, nor is NIMP's possibility of HCP process and the Section 10 process and the Section 7 review and biological opinion process is to allow some take, but that ensures the conservation and recovery over time without having to deal with case-by-case take cases that are expensive, fact-intensive. NIMPS has a duty under ESA to ensure the and they have forsaken their obligation. That's the essence of both the original and the supplemental complaint in response to the 2007 action. Lujan, footnotes 7 and 8 are abundantly clear. Glasser's concrete interests, which were not challenged, and the district court agreed, her concrete interests are directly related to the procedural duties that NIMPS did not understand your argument. Thank you to both counsel. The case just argued is submitted for a decision by the court.
judges: Burns, Rawlinson, Callahan